UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATIONAL UNION FIRE
INSURANCE CO.,

                    Plaintiff,

        v.

ZILLOW, INC.,

                    Defendant.

CASE NO. C16-1461JLR

ORDER

## I.        INTRODUCTION

Before the court is Plaintiff National Union Fire Insurance Company of Pittsburgh,

P.A.'s ("National Union") motion (1) for judgment on the pleadings as to its affirmative

defenses and (2) to dismiss Defendant Zillow, Inc.'s ("Zillow") Counterclaims (Mot.

(Dkt. # 18).  Zillow opposes the motion.  (*See* Resp. (Dkt.# 21).)  National Union filed a

reply memorandum (Reply (Dkt. # 22)), and Zillow filed a surreply asking the court to

strike material contained in National Union's reply (Surreply (Dkt. # 24)).  The court has

considered these submissions, the relevant portions of the record, and the applicable law. Considering itself fully advised,[1] the court GRANTS National Union's motion (1) for judgment on the pleadings as to its affirmative defenses and (2) to dismiss Zillow's counterclaims for the reasons described herein.

## II.   BACKGROUND

Zillow is a company headquartered in Washington State that hosts an online marketplace for real estate property listings.  (Compl. ¶ 2.)  National Union is an insurance company, registered in Pennsylvania, with its principal place of business in New York.  (*Id*. ¶ 1.)  Zillow is insured by National Union under a Specialty Risk Protector Policy ("the Policy"), which is meant to cover claims against Zillow that relate to Zillow's online media content.  (Baker Decl. (Dkt. # 19), Ex. 1 at 2.)  The Policy provides coverage for claims-made against Zillow during the Policy period of July 19, 2014, through July 19, 2015.  (*Id*. at 5.)  The Policy is a renewal of Zillow's previous National Union policy, which provided coverage from July 19, 2013, through July 19, 2014.  (*See* Counterclaim ¶ 6.)

---

[1] Zillow has requested oral argument.  The court finds oral argument unnecessary to the disposition of National Union's motion and denies Zillow's request.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  The district court may decline oral argument when the requesting party will not suffer prejudice as a result.  *Houston v. Bryan*, 725 F.2d 516, 518 (9th Cir. 1984).  Because Zillow has had the opportunity to provide the court with evidence and briefing, and because Zillow's arguments have received full and fair treatment, the court finds Zillow will not be prejudiced by the denial of oral argument.  *Lake at Las Vegas Inv'rs Grp., Inc. v. Pac. Malibu Dev. Corp*., 933 F.2d 724, 729 (9th Cir. 1991).

1   On July 10, 2014, VHT, Inc. ("VHT"), a company specializing in property

2   photography sent Zillow a demand letter,[2] claiming that Zillow was misusing VHT's

3   images and demanding that Zillow remove the images from its website.  (Baker Decl.,

4   Ex. 3 at 2.)  Specifically, VHT explained that Zillow was permitted to use VHT images

5   only in furtherance of sales or marketing.  (*Id*.)  VHT claimed that Zillow violated its

6   limited license by (1) allowing VHT's images to remain on Zillow's website after the

7   photographed property was sold, and (2) allowing people to use and share VHT's images

8   for home improvement and design purposes through Zillow Digs, one of Zillow's

9   applications.  (*Id*.)  VHT provided Zillow with a spreadsheet of offending images and

10   asked that Zillow remove those images and take steps to prevent VHT's images from

11   being improperly used on Zillow's website in the future.  (*Id*. at 2-3.)

12   On July 21, 2014, Zillow responded to VHT, requesting additional information

13   about the images VHT identified.  (Counterclaim ¶ 5.)  VHT did not reply (*id*.) and,

14   according to National Union, Zillow did not take down the images (Compl. ¶ 7).

15   On July 8, 2015—nearly a year after sending the demand letter—VHT filed suit

16   against Zillow.  *See VHT, Inc. v. Zillow*, No. C15-1096JLR (W.D. Wash. Feb. 22, 2017),

17   Compl., Dkt. # 1.  VHT's complaint requested relief for: (1) direct infringement based on

18   _____

19   [2] The parties use different terms to describe VHT's 2014 letter.  (*Compare* Compl. ¶ 6 (describing the document as a "demand letter"), *with* Counterclaim ¶ 1 (describing the document

20   as a "Takedown Notification").)  The 2014 letter included the subject line, "VHT, Inc. – Takedown Notification" and directed Zillow to immediately takedown the allegedly-infringing

21   images. (*See* Baker Decl., Ex. 3 at 2.)  Because the document is best described as a demand letter, the court will use this term for the remainder of the order.  *See* Black's Law Dictionary

22   429 (6th ed.1990) (A demand is"[a]n imperative request preferred by one person to another, under a claim of right, requiring the latter to do or yield something or to abstain from some act.").

1   alleged display and distribution of the photographs by Zillow (2) contributory

2   infringement based on the alleged facilitation of users posting the photographs, and (3)

3   vicarious liability for failing to prevent users from posting the alleged copyrighted works

4   on the Digs site.  *Id*.  In support of its allegations, VHT cited its 2014 demand letter to

5   demonstrate that Zillow knew it was improperly using VHT's images on its website and

6   the Zillow Digs application.  *Id*. Compl. ¶¶ 52-53, 70.  The VHT lawsuit resulted in a

7   jury verdict against Zillow in the amount of $8,272,328.92.  *Id*. Judgment, Dkt. #296.

8        On July 10, 2015, Zillow notified National Union that VHT had filed a complaint.

9   (Compl. ¶ 8; Answer ¶ 8.)  National Union responded on July 20, 2015, and agreed to

10   provide Zillow a defense in the VHT action pursuant to a reservation of rights.  (Compl.

11   ¶ 9; Answer ¶ 9.)  Specifically, National Union requested that Zillow contact National

12   Union to discuss Zillow's selection of defense counsel from National Union's list of

13   pre-approved panel law firms.  (Compl. ¶ 9; Answer ¶ 10.)  Zillow did not "reach out" to

14   National Union regarding Zillow's selection of defense counsel.  (Answer ¶ 10; *see*

15   Compl. ¶ 10.)

16        Zillow initially hired the law firm DLA Piper, which, according to National

17   Union, is not on its list of preapproved panel firms.[3]  (Comp. ¶10.)  Zillow then

18   substituted Susman Godfrey for DLA Piper, which National Union claims is also not on

19   its list of pre-approved firms.  (Compl. ¶ 14); *see also VHT*, No. C15-1096JLR, Dkt. # 67

20

21

22   _____

   [3] The parties have not provided the court with National Union's list of preapproved panel
   firms.  (*See generally* Baker Decl.)

ORDER - 4

1   (March 1, 2016, order permitting withdrawal of DLA Piper and noting that Zillow was

2   represented by successor counsel Susman Godfrey).

3         On June 17, 2016, National Union sent Zillow another letter that "reiterated

4   [National Union]'s commitment to providing Zillow with a defense to the VHT action"

5   and requested that Zillow provide National Union with defense cost invoices, budgets,

6   liability and damages analyses and status reports prepared by defense counsel.  (Compl.

7   ¶ 16; Answer ¶ 16.)  Zillow sent National Union copies of its defense cost invoices, but

8   Zillow would not send National Union a budget or any analysis of the VHT action unless

9   National Union signed a confidentiality agreement.  (Compl. ¶ 16.)

10        On August 14, 2015, Zillow provided National Union with a copy of VHT's

11  demand letter for the first time.  (Compl. ¶ 6; Answer ¶ 6.)  In response, National Union

12  wrote to Zillow on September 15, 2015, explaining that National Union "firmly believes

13  that the VHT action is outside the scope of coverage provided by the Policy."  (Compl.

14  ¶¶ 12, 23; Counterclaim ¶ 23.)  Specifically, National Union contends that VHT's claims

15  against Zillow were first made during the previous policy period when VHT sent Zillow

16  the 2014 demand letter.  (*See* Compl. ¶ 12.)

17        Under the terms of the Policy, National Union was required to pay certain losses[4]

18  related to Zillow's media content:

19

20        _____

        [4] "Loss" is defined in the Policy to include compensatory damages, judgments,
21  settlements, pre judgment and post judgment interest and Defense Costs, including punitive,
    exemplary and multiple damages where insurable by the applicable law which most favors
22  coverage for such punitive, exemplary and multiple damages."   (Baker Decl., Ex. 1 at 54.)

> [S]olely with respect to [(1) a written demand for money, service, non-monetary relief or injunctive relief; or (2) a Suit,][5] first made against an Insured during the Policy Period or Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy . . . .

(Baker Decl., Ex. 1 at 52 (emphasis removed).)  Further, as a condition precedent to coverage under the Policy, Zillow was required to give National Union notice of any claim made against Zillow "as soon as practicable" (*id*. at 12), but "no later than either: (1) forty-five (45) days after the end of the Policy Period; or (2) the end of any applicable Discovery Period" (*id*. at 13 (emphasis removed).)  The Policy provides:

> If written notice of a Claim . . . has been given to the Insurer . . . then . . . any subsequent Claim made against an Insured . . . arising out of, based upon or attributable to the facts giving rise to such Claim . . . for which such notice has been given, or alleging any Related Act thereto, shall be considered made at the time such notice was given.

(*Id*. at 13 (emphasis removed).)

On September 15, 2016, National Union filed a complaint for breach of contract based on Zillow's (1) failure to timely notify National Union of VHT's claim and demand letter as soon as practicable, (2) failure to ensure that Zillow's defense counsel followed National Union's litigation guidelines, and (3) failure to coordinate or otherwise cooperate with National Union regarding the defense of the VHT action.  (*See* Compl. ¶ 37.)  National Union also seeks declaratory judgment that, under the terms of the

---

[5] The court has substituted the definition of the term "Claim" as provided by the Policy. (*See Id*. at 53.)  "'Claim' means: (1) a written demand for money, services, non-monetary relief or injunctive relief; or (2) a Suit.  (*Id*.)  "'Suit' means a civil proceeding for monetary, non-monetary or injunctive relief, which is commenced by service of a complaint or similar pleading.  Suit includes a binding arbitration proceeding to which an Insured must submit or does submit with the Insurer's consent."  (*Id*. at 54.)

Policy and under Washington law, it has no duty to defend or indemnify Zillow because VHT's claims first arose in the previous policy period.  (*Id.* ¶ 33.)

In response, Zillow asserts eight affirmative defenses.  (Answer at 6.)  Zillow also counterclaims for (1) a declaratory judgment that National Union has a duty to defend Zillow in connection with the VHT Action, (2) breach of contract for National Union's failure to pay for Zillow's defense of the VHT Action, and (3) the attorneys' fees and costs Zillow has incurred in this action.  (Counterclaims I-III.)  Zillow argues the VHT action is covered under the Policy because Zillow timely notified National Union of lawsuit, which Zillow contends is independent of VHT's demand letter.  (Resp. 2-17.)  National Union brings the instant motion, seeking declaratory judgment on the pleadings that there is no coverage for the VHT litigation.  (Mot. at 7.)  National Union also seeks dismissal of Zillow's counterclaims.  (Mot. at 15.)

### III.    ANALYSIS

**A.    Legal Standard**

National Union moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and moves to dismiss Zillow's counterclaims pursuant to Federal Rule of Civil Procedure 12(b).  (*See* Mot.)  Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed— but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "In considering a motion for judgment on the pleadings, a court must accept as true all material allegations in the complaint and must construe those allegations in the light most favorable to the plaintiff." *United States v. In re Seizure of One Blue Nissan Skyline Auto. & One Red Nissan*

*Skyline*, 683 F. Supp. 2d 1087, 1088 (C.D. Cal. 2010) (citing *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994)).  The court employs the same standard in considering a motion to dismiss pursuant to Rule 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The court, however, need not accept as true a legal conclusion presented as a factual allegation.  *Id*.  A pleading that offers only "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id*. A complaint does not survive dismissal where "it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (quoting *Twombly*, 550 U.S. at 557).  In addition, "[a] plaintiff suing multiple defendants 'must allege the basis of [her] claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim to put defendants on sufficient notice of the allegations against them.'"  *Flores v. EMC Mortg. Co*., 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (quoting *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988)).

"Because [a motion to dismiss and a motion for judgment on the pleadings] are analyzed under the same standard, a court considering a motion for judgment on the pleadings may give leave to amend and 'may dismiss causes of action rather than grant

judgment.'" *Manchester v. Ceco Concrete Const.*, LLC, C13-832RAJ, 2014 WL 6684891, at *3 (W.D. Wash. Nov. 24, 2014) (quoting *Moran v. Peralta Cmty. Coll. Dist.*, 825 F. Supp. 891, 893 (N.D. Cal. 1993)).

## B.     National Union's Motion for Judgment on the Pleadings

National Union moves for judgment on the pleadings, arguing that VHT's claim against Zillow is not covered by the Policy because it began before the Policy period and was not reported within 45 days.  (Mot. at 7.)  Specifically, National Union contends that under the Policy's "Claims first-made" provision, VHT's claim against Zillow began with the July 10, 2014, demand letter, which was prior to the Policy period.  (*Id.*; Baker Decl., Ex. 1 at 52.)  Zillow counters that the July 10, 2014, demand letter constitutes a separate and distinct claim from the VHT litigation.  (*See* Resp. 3-7.)

"Under Washington law, '[i]nterpretation of insurance policies is a question of law, in which the policy is construed as a whole and each clause is given force and effect." *Great Am. Ins. Co. v. Sea Shepherd Conservation Soc.*, No. C13-1017RSM, 2014 WL 2170297, at *5 (W.D. Wash. May 23, 2014) (quoting *Overton v. Consol. Ins. Co.*, 38 P.3d 322, 324 (Wash. 2002)).  "The Court gives policy terms a 'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Id.* (quoting *Overton*, 38 P.3d at 325).  "Insurance policy exclusions, as well as any ambiguity in policy language, are to be strictly construed against the insurer." *Id.*  "However, if the policy language is clear and unambiguous, the court must enforce it as written and may not create ambiguity where none exists." *Id.*  "In interpreting policies, courts are bound by the definitions provided therein." *Id.*  With

1  these principles in mind, the court first determines whether VHT's 2014 demand letter

2  was a "Claim" under the terms of the Policy, and, if so, the court then evaluates whether

3  the demand letter was the same "Claim" as the VHT litigation.

4       Zillow has a "claims-made" policy with National Union.  (Baker Decl., Ex. 1 at

5  52.)  "A 'claims-made' policy covers any claim first made against the insured,

6  individually or otherwise, during the policy period."  *Juszkiewicz v. Fed. Ins. Co*., C 97

7  2111 SBA, 1998 WL 476263, at *3 (N.D. Cal. June 18, 1998), *aff'd*, 203 F.3d 831 (9th

8  Cir. 1999).  Under the Policy, coverage is contingent on two requirements: (1) the claim

9  must be first made against the insured during the Policy period, and (2) the claim must be

10  reported within 45 days of the end of the Policy.  (Baker Decl., Ex. 1 at 52.)  For

11  claims-made policies, "giving notice within the policy period is what actually creates

12  coverage in the first instance."  *Oregon Sch. Activities Ass'n v. Nat'l Union Fire Ins. Co.*

13  *of Pittsburgh*, 279 Fed. Appx. 494, 495 (9th Cir. 2008); *see also Alaska Interstate*

14  *Constr., LLC v. Crum & Forster Specialty Ins. Co., Inc*., No. 3:14-CV-00126-RRB, 2015

15  WL 7253673, at *4 (D. Alaska Nov. 17, 2015) ("[A] 'claims-made' policy only protects

16  the insured for claims made against it and reported to the insurer during the policy

17  period."); *Executive Risk Indem., Inc. v. Chartered Benefit Servs., Inc*., No. 03 C 3224,

18  2005 WL 1838433, at *5 (N.D. Ill. July 29, 2005) ("A 'claims made and reported' policy

19  requires that the claim against the insured, and the report of such claim to its carrier,

20  occur within the same policy period as a precondition to coverage.").

21  //

22  //

1    1.  The 2014 Demand Letter

2        To begin, the 2014 VHT demand letter was a "Claim" that Zillow did not timely

3    report under the terms of the Policy.  The Policy defines "Claim" as "(1) a written

4    demand for money, services, non-monetary relief or injunctive relief; or (2) a Suit."

5    (Baker Decl., Ex. 1 at 54.)  VHT's July 10, 2014, letter was from VHT's intellectual

6    property counsel and included a spreadsheet containing a list of images that Zillow was

7    using in a manner that allegedly violated the terms of Zillow's limited license.  (Baker

8    Decl., Ex. 3 at 2-3.)  VHT directed Zillow to immediately remove the allegedly infringing

9    images from its website.  (*Id*. at 3.)  VHT further noted, "there are many more infringing

10   images on the Zillow website than are listed on the enclosed spreadsheet . . . we will

11   provide you with a supplemental spreadsheet that identifies other images for removal."

12   (*Id*.)  VHT's intellectual property counsel continued, "I am providing this notice in good

13   faith and with the reasonable belief that VHT's copyrights are being infringed."  (*Id*.)

14   Under the language of the Policy, VHT's 2014 letter to Zillow requesting that all

15   infringing images be removed from Zillow's website, was "a written demand

16   for . . . non-monetary relief or injunctive relief."  (*Id*., Ex. 1 at 54.)

17       In addition to finding that the 2014 demand letter was a "Claim" under the Policy,

18   the court also finds that Zillow failed to report the 2014 letter to National Union within

19   45 days of the end of the 2013-2014 policy period—or for more than a year afterward—

20   and therefore did not trigger coverage for the demand letter under the terms of the Policy.

21   (Compl. ¶ 6; Answer ¶ 6); *Safeco Title Ins. Co. v. Gannon*, 774 P.2d 30, 35 (Wash. Ct.

22   App. 1989) ("Claims-made or discovery policies are essentially reporting policies.  If the

ORDER - 11

1    claim is reported to the insurer during the policy period, then the carrier is legally

2    obligated to pay; if the claim is not reported during the policy period, no liability

3    attaches.").  Consequently, National Union is not required to provide coverage for any

4    losses Zillow incurred as a result of the 2014 demand letter.

5              2.  Relationship Between the Demand Letter and the Litigation

6              The issue before the court is whether the demand letter—notifying Zillow that it

7    had infringing images on its website and directing Zillow to immediately take those

8    images down (Baker Decl. Ex 3, at 3)—is sufficiently related to the VHT litigation (*id*.,

9    Ex. 2).  The Policy's "Claims first-made" provision is a so-called "relation back

10   provision . . . a common provision that treats related claims as dating from the first one

11   made." *ITC Invs., Inc. v. Emp'rs Reinsurance Corp*., No. CV98115128, 2000 WL

12   1996233, at *8 (Conn. Super. Ct. Dec. 11, 2000) (internal quotations omitted).

13            Zillow concedes that the demand letter "is 'related' to the VHT Action in the sense

14   both arise out of the same alleged facts."  (Resp. at 6.)  Zillow nevertheless argues that

15   the 2014 demand letter was a separate "Claim" from the VHT litigation and therefore

16   Zillow's failure to report the 2014 letter should not affect National Union's obligation to

17   cover the timely-reported VHT litigation.  (Resp. at 3.)  Zillow bases its argument on four

18   primary contentions: (1) Under the Policy, a "Claim" is defined as a written demand ***or*** a

19   suit, so a suit following a written demand is by definition a different "Claim" (*id*. at 3-5);

20   (2) there are significant differences between the 2014 demand letter and the VHT

21   litigation (*id*. at 6-7); (3) in drafting the Policy, National Union excluded common

22   language that would have defined the 2014 demand letter as part of the same Claim as the

1    litigation (*id.* at 11-13); and (4) National Union waived any requirement that Zillow

2    disclose the 2014 letter during the policy renewal process (*id.* at 14-15).  The court

3    addresses each of Zillow's arguments in turn.

4              *a.  Use of the term "or" in the definition of Claim*

5            Zillow first argues that because the Policy defines "Claim" as "'written demands'

6    *or* a Suit" (*id.* at 3), "each new written demand or proceeding is a new Claim, regardless

7    of whether it involves the same or different subject" (*id.* at 4).  The court declines to

8    contort the language of the Policy in this manner.  Under the Policy, "'Claim' means: (1)

9    a written demand for money, service, non-monetary relief or injunctive relief; or (2) a

10   Suit."  (Baker Decl., Ex. 1 at 52 (emphasis omitted).)  To begin, Zillow gives too much

11   weight to the term "or," the use of which is required by basic grammatical

12   considerations.[6]  If National Union had used the term "and" in place of "or," the clause

13   would require National Union to cover only those claims where there had been a demand

14   letter *and* a lawsuit.[7]  Further, the definition of "Claim" is necessarily broken into two

15   clauses.  (*See* Baker Decl., Ex. 1 at 54.)  The first clause is modified by the term "written

16   demands," followed by the categories of demands that qualify as a Claim under the

17

---

18           [6] "Conventions of statutory interpretation dictate that courts need not interpret every 'or'
19   as disjunctive."  *Black v. Nat'l Merit Ins. Co.*, 226 P.3d 175, 182 (Wash. Ct. App. 2010).  "The
     same is also true of contract interpretation."  *Id.*  "'[C]ourts need not mechanically interpret
     every 'or' as disjunctive, but rather . . . courts should interpret the word 'or' according to
20   context.'"  *Id.* (quoting *Smith v. United Television, Inc. Special Severance Plan*, 474 F.3d 1033,
     1037 (8th Cir. 2007)).

21           [7] The language would read: National Union will cover Zillow's losses "solely with
     respect to [(1) a written demand for money, service, non-monetary relief or injunctive relief; **and**
22   (2) a Suit,] first made against an Insured during the Policy Period or Discovery Period."

ORDER - 13

1   Policy.  (*Id.*)  The second clause includes only the term "Suit," which is not modified by

2   "written demands," and therefore must be separated from the first clause.  (*Id.*)

3          Nevertheless, Zillow supports its argument by citing *Cox Communications, Inc. v.*

4   *National Union Fire Insurance Co. of Pittsburgh, Pa.*, 708 F. Supp. 2d 1322, 1324 (N.D.

5   Ga. 2010).  In *Cox*, the insured had a claims-made policy with National Union, which

6   provided coverage only for "Claims first made against an Insured during the Policy

7   Period."  *Id.* at 1326.  The *Cox* policy defined a claim as "a civil, criminal, administrative,

8   regulatory or arbitration proceeding for monetary, non-monetary or injunctive relief

9   which is commenced by . . . service of a complaint or similar pleading."  *Id.* (internal

10   quotations omitted).  The insured failed to timely report a claim brought by shareholders,

11   but timely reported a second claim involving the same allegations that was filed by

12   successors to the original complaint—a bondholders committee appointed by the

13   bankruptcy court to prosecute remaining claims.  *Id.* at 1325-26.  Reasoning that the

14   definition of "Claim" provided by the policy referred to "a proceeding commenced by

15   service of a complaint . . . not . . . the individual causes of action asserted within the

16   complaint,"  the court held that the two actions were separate claims under the policy.  *Id.*

17   at 1326.

18          The *Cox* holding fails to sway the court.  As National Union argues, the *Cox*

19   holding was based on policy language describing "proceedings."  (Reply at 2.)

20   Specifically, the *Cox* court relied on the policy's definition of proceedings to find, based

21   on the language of the policy, that each time a new complaint was filed a new proceeding

22   commenced.  708 F. Supp. at 1324.  But *Cox* "does not address the issue at hand, *i.e.*,

1   whether a demand letter and a subsequent legal proceeding constitute the same **Claim**."

2   (Reply at 2.)

3        Further, Zillow's argument rests on use of the term "or" in the Policy's definition

4   of "Claim," yet the court's analysis in *Cox* did not address this argument.  Courts that

5   have addressed Zillow's argument regarding the disjunctive use of the term "or" have

6   rejected it.  *See, e.g.*, *Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co*., 78 Cal. Rptr.

7   3d 264, 269-270 (Cal. Ct. App. 2008) (rejecting the insured's argument that "because the

8   policies define the term 'claim' in the disjunctive, each of the four events described in the

9   definition gives rise to a separate claim").

10               *b.  Differences between the demand letter and lawsuit*

11       Zillow next argues that the demand letter "involved different legal allegations and

12  sought different relief" than the VHT litigation and therefore was not part of the same

13  "Claim."  (Resp. at 10.)  Courts that have addressed this issue have not required that

14  demand letters be identical to the claims in later litigation.  *See, e.g.*, *Alaska Interstate*

15  *Constr.*, 2015 WL 7253673, at *2 (where the opposing party complained to the insured

16  during a meeting that the insured had mixed contaminated and uncontaminated soil in

17  order to inflate the bill, these complaints qualified as the same claim as a later lawsuit

18  that charged the insured with a wider array of billing abuses); *Westrec Marina*, 78 Cal.

19  Rptr. 3d at 268 ("Although the letter did not expressly demand payment or refer to any

20  specific amount, its meaning was clear that, absent some form of negotiated

21  compensation, [the employee] would commence a lawsuit against Westrec."); *Tucker v.*

22  *Am. Int'l Grp., Inc*., 179 F. Supp. 3d 224, 248 (D. Conn. 2016) (demand letter made

ORDER - 15

1    before inception of the Policy was a "claim" as defined by the policy and was therefore

2    not first made during the relevant timeframe).

3         Zillow does not dispute that the demand letter "is 'related' to the VHT Action in

4    the sense both arise out of the same alleged facts."  (Resp. at 6.)  Instead, Zillow argues

5    that the demand letter is not related *enough*, and cites a number of "significant

6    differences" between the letter and the lawsuit.  (*Id.*)  Among these differences, the letter

7    (1) cited a different provision of the Copyright Act than the VHT Action; (2) did not

8    request damages "nor even mention a potential lawsuit," and (3) directed Zillow to

9    remove only a small fraction of the allegedly infringing images that would eventually

10   become part of the VHT Action.  (*Id.*)

11        In comparing the demand letter to the VHT litigation, the relevant question is

12   whether the two Claims involve the same relevant acts.  *Ettinger & Assocs., LLC v.*

13   *Hartford/Twin City Fire Ins. Co.*, 22 F. Supp. 3d 447, 456–57 (E.D. Pa. 2014) ("When

14   determining whether claims relate back to or arise from the same facts, courts review the

15   complaint filed in the prior action to determine whether the acts at issue in it—not the

16   legal theories or claims that it propounds—are the same as, or related to, the acts alleged

17   in the present dispute."); *Juszekiewicz v. Fed. Ins. Co.*, No. C 97 2111 SBA, 1998 WL

18   476263, at *1-4 (N.D. Cal. June 18, 1998) (denying coverage for "new claims" on

19   grounds that they were merely new theories of recovery based on wrongful conduct

20   previously asserted, not separate violations of the underlying contractual rights).

21        In this case, the demand letter directed Zillow to remove VHT-owned images on

22   Zillow's website that were posted in alleged violation of the terms of Zillow's limited

1   license.  (Baker Decl., Ex. 3.)  The demand letter described allegedly-infringing images

2   both on Zillow's website and on the Zillow Digs page, where Zillow was "allowing

3   people to use and share [infringing images] through Zillow Digs . . . for home

4   improvement and design purposes."  (*Id*. at 2.)  The VHT complaint alleges identical

5   facts—that Zillow both posted VHT images on its website in a manner that violated the

6   terms of its limited license, and facilitated copyright infringement by Zillow Digs users.

7   *See VHT*, No. C15-1096JLR, Compl. (Dkt. # 1).   VHT asserted four claims based on this

8   infringement: direct copyright infringement, contributory copyright infringement,

9   contributory copyright infringement by inducement, and vicarious copyright

10   infringement.  *Id*., Compl., Counts I-IV.  In order to be significantly related to the

11   litigation, the demand letter did not need to enumerate the specific causes of action that

12   would eventually be at issue in the litigation, or even refer to litigation.  Rather, the

13   demand letter and litigation are related if they are based on the same wrongful conduct.

14   *Juszekiewicz*, 1998 WL 476263, at *1–4.  The demand letter was sent by VHT's attorney,

15   informed Zillow of copyright violations, and directed Zillow to take down the infringing

16   images at issue in the litigation.  (Baker Decl., Ex. 2.)  The court finds no meaningful

17   difference between the demand letter and the VHT litigation for purposes of coverage

18   under the Policy.

19           *c.  Absence of clarifying language*

20           Zillow also argues that in drafting the Policy, National Union excluded commonly

21   used language that would have defined the 2014 letter as part of the same Claim as the

22   litigation.  (*Id*. at 11-13.)  In particular, Zillow argues that National Union could have

1    included a "claim integration clause" in the Policy, such as the one described in *Westrec*,

2    78 Cal. Rptr. 3d at 266 ("all claims arising from the same events 'or in any way involving

3    the same or related facts . . . or the same or related series of facts . . .' are deemed a single

4    claim.").  Instead, National Union's Policy includes a claim integration clause that Zillow

5    describes as "***conditional***" (Resp. at 12 (emphasis in original)):

6        ***If*** written notice of a Claim . . . has been given to the Insurer pursuant to Clause
            (a) above, ***then:*** . . . any subsequent Claim made against an Insured . . . arising out
7        of, based upon or attributable to the facts giving rise to such Claim . . . for which
            notice has been given, or alleging any Related Act thereto, shall be considered
8        made at the time such notice was given.

9    (Baker Decl., Ex. 1 at 13 (emphasis supplied by Zillow).)

10       Zillow's argument focuses too narrowly on the language of the provision quoted

11    above, while missing the broader language and purpose of the Policy.  The parties agree

12    that the quoted provision is inapplicable to the determination of whether the VHT

13    litigation and demand letter were the same "Claim" under the Policy.  (*See* Resp. at 12

14    ("the Policy contains a conditional claim integration clause that does not apply precisely

15    because the [demand letter] was not reported."); Reply at 4-5 (asserting that "Zillow's

16    argument regarding the Related Acts clause 'is a non-sequitur' as the clause is not at

17    issue in National Union's motion").)

18       Although Zillow focuses on the absence of a claims integration clause, it ignores

19    Policy language that highlights the importance of the Policy's "Claims first made"

20    provision.  In particular, the Policy provides National Union with certain rights to direct

21    the course of any Claim.  These rights include the opportunity to settle a Claim, with the

22

1    insured's consent,[8] and the right to investigate any Claim.  (Baker Decl., Ex. 1 at 52.)

2    National Union's ability to direct the potential litigation in this case, for example by

3    investigating Zillow's conduct in reference to the allegedly infringing images that were

4    posted on Zillow's website and Digs App, could have saved National Union millions of

5    dollars in potential coverage liability.  *See VHT*, No. C15-1096JLR, Judgment (Dkt.

6    # 296).  By failing to provide National Union with notice of the 2014 letter, Zillow

7    denied National Union this opportunity.  Accordingly, the court finds ample support in

8    the Policy language for National Union's interpretation of the "Claims first made"

9    provision, which required Zillow to report Claims during the Policy period in which they

10   occurred.

11         *d.  Waiver*

12         Finally, Zillow argues that National Union waived any requirement that Zillow

13   disclose the 2014 demand letter during the policy renewal process.[9]  (Resp. at 14; Answer

14   at 6; Surreply at 1.)  In particular, Zillow contends that on the renewal application,

15   National Union "intentionally chose not to require that Zillow provide a 'no claims'

16   warranty or otherwise identify any facts or circumstances that could reasonably give rise

17   to a claim in the future."  (*Id.*)  "Waiver requires that the insurers voluntarily and

18

19   _____
     [8] Where the insured refuses to settle a Claim, National Union is only required to cover
20   losses up to the amount for which National Union could have settled such Claim, plus defense
     costs incurred prior to the date of such refusal, plus 50% of defense costs incurred with National
     Union's prior written consent after the date of such refusal.  (Baker Decl., Ex. 1 at 52.)
21   [9] Zillow has submitted a surreply (Dkt. # 24) seeking to strike National Union's statement
     that Zillow's waiver argument "is not properly before the [c]ourt, because Zillow did not plead
22   waiver" (Dkt. # 22).  Finding that Zillow appropriately asserted waiver as an affirmative defense
     (*see* Answer at 6), the court GRANTS Zillow's motion to strike.

1   intentionally relinquished a known right or that their conduct 'warrants an inference of

2   the relinquishment of such right.'"   *Saunders v. Lloyd's of London*, 779 P.2d 249, 254

3   (Wash. 1989)(quoting *PUD 1 v. WPPSS*, 705 P.2d 1195, 1204 (Wash. 1985)).

4   "Voluntarily implies a choice, a conscious decision to relinquish a right; conduct giving

5   rise to a waiver argument cannot be consistent with any other interpretation than intent to

6   waive."   *Id*.   "The focus for waiver, then, is on the insurer, not on the insured."   *Id*.

7            The court does not find that National Union waived its right to notice of the Claim.

8   Zillow argues that the renewal application did not provide Zillow with an avenue for

9   disclosing the Claim because the renewal application directed applicants to abstain from

10  describing previous claims.   (Resp. at 15.)   Zillow's argument is unavailing, however,

11  because there was already a provision in place that required Zillow to report any Claims

12  for which it sought coverage.   (Baker Decl., Ex. 1 at 13 ("A Claim . . . must be reported

13  no later than either (1) forty-five days after the end of the Policy Period; or (2) the end of

14  any applicable Discovery Period.").)   National Union's failure to include a duplicative

15  reporting requirement in its renewal application does not demonstrate "a conscious

16  decision to relinquish a right," *Saunders*, 779 P.2d at 254, especially a right that is so

17  central to claims-made policies—timely reporting.   *See, e.g.*, *Safeco Title Ins. Co. v.

18  Gannon*, 774 P.2d 30, 35 (Wash. Ct. App. 1989) ("Claims-made or discovery policies are

19  essentially reporting policies."); *Ritrama, Inc. v. HDI-Gerling Am. Ins. Co*., 796 F.3d

20  962, 968 (8th Cir. 2015) ("Although in a claims-made policy the mere fact that an insured

21  knows of an occurrence that may lead to a liability does not prevent the insured from

22

1  purchasing such insurance, once a claim has been made, a party cannot purchase a

2  claims-made policy to cover a previously made claim.")

3       The court finds that the VHT Claim was first made in 2014, when Zillow received

4  the demand letter, and was not timely reported under the terms of the Policy.

5  Accordingly, the court finds that National Union has no obligation to provide Zillow with

6  coverage for the VHT litigation.  Zillow's arguments to the contrary are unavailing.

7  **C.**     **National Union's Motion to Dismiss**

8       National Union also seeks dismissal of Zillow's counterclaims.  (*See* Mot. 15-19.)

9  Zillow asserts counterclaims for (1) a declaratory judgment that National Union has a

10  duty to defend Zillow in connection with the VHT Action, (2) breach of contract for

11  National Union's failure to pay for Zillow's defense of the VHT Action, and (3) the

12  attorneys' fees and costs Zillow has incurred in this action.  (Counterclaims I-III.)

13       As discussed above, the court finds that the VHT litigation forms part of a single

14  Claim that was first made when VHT sent its demand letter in 2014.  *See supra* §§

15  III.B.1(a)-(d).  As the Claim was not first made during the Policy period of July 19, 2014,

16  through July 19, 2015, coverage is not available under the Policy.  *See Oregon Schools*,

17  279 Fed. Appx. 494, 495 (9th Cir. 2008) ("[G]iving notice within the policy period is

18  what actually creates coverage in the first instance.").  Because National Union has no

19  obligation to provide coverage to Zillow for the VHT litigation, Zillow's counterclaims—

20  which seek to enforce coverage under the Policy—are moot.

21       Zillow seeks leave to amend its counterclaims "to include subsequent factual

22  developments and other facts relevant to National Union's conduct."  (Resp. at 23.)

1  Leave to amend is to be freely given.  *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir.

2  1999).  However, Zillow's counterclaims cannot be saved by amendment because

3  National Union has no obligation to provide coverage for the VHT litigation so

4  arguments about National Union's conduct during the VHT litigation would not affect the

5  outcome in this matter.  *See supra* § III.B.  The court therefore concludes that amendment

6  would be futile and declines to grant leave to amend.  *See Bowles*, 198 F.3d at 758

7  (permitting denial of leave to amend where amendment would be futile).  While the result

8  the court reaches renders Zillow without coverage under the Policy, "it is nonetheless

9  dictated by the plain language of [its] bargained-for insurance Polic[y]."  *Great Am. Ins.*

10 *Co. v. Sea Shepherd Conservation Soc.*, No. C13-1017RSM, 2014 WL 2170297, at *8

11 (W.D. Wash. May 23, 2014).

12             **IV.    CONCLUSION**

13         Based on the foregoing analysis, the court GRANTS National Union's motion for

14 judgment on the pleadings and to dismiss Zillow's counterclaims (Dkt. # 18).

15         Dated this 13th day of April, 2017.

16

17

18         _____

19         JAMES L. ROBART
           United States District Judge

20

21

22

ORDER - 22